**CORRECTED**

# In the United States Court of Federal Claims

No. 21-2150C
(Filed: March 11, 2022)
(Re-Filed: March 29, 2022)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| PROGRESS FOR BAKERSFIELD VETERANS LLC, | |
| *Plaintiff*, | Bid protest; post-award bid protest; 28 U.S.C. § 1491(b)(1); FAR 9.105-2(a)(1) (2018); RCFC 12(b)(1); RCFC 12(b)(6); prejudice. |
| v. | |
| THE UNITED STATES, | |
| *Defendant*, | |
| and | |
| SASD DEVELOPMENT GROUP LLC, | |
| *Intervenor*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Elizabeth N. Jochum*, Washington, DC, for plaintiff, with whom was *Michael J. Slattery*, and *Tjasse L. Fritz*, of counsel.

*John H. Roberson*, Senior Trial Counsel, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Kathryn M. Adams*, *Kristen S. Grotecloss*, General Attorneys, and *Stephen M. Kelleher*, Deputy Chief Counsel, United States Department of Veterans Affairs, of counsel.

---

[1] This opinion was originally filed under seal to afford the parties an opportunity to propose redactions of protected information. The parties filed a joint document with proposed redactions on March 25, 2022 (ECF No. 73). We thus reissue this opinion with the proposed redactions.

*Patrick T. Rothwell, Esq.*, Washington, DC, for intervenor. *Jonathan T. Williams*, *Katherine B. Burrows*, and *Lauren R. Brier,* of counsel.

OPINION

BRUGGINK, *Judge.*

This is the second time we have had occasion to review a challenge by plaintiff, Progress for Bakersfield Veterans, LLC ("PBV"), to actions by the Department of Veterans Affairs ("VA") arising out of this solicitation. On December 9, 2019, the VA issued a solicitation for a 20-year lease of 30,100 square feet of space to be used for a Community Based Outpatient Clinic providing primary, specialty, and mental health care to veterans in Bakersfield, California. Plaintiff is the incumbent on the current lease, which is being fulfilled at PBV's facility located at 1801 Westwind Drive.

In its first protest, brought in August 2020, PBV filed a pre-award protest challenging its exclusion from the competitive range. We rejected the challenge and permitted the agency to proceed in negotiations with the only remaining bidder, the intervenor, SASD Development Group, LLC ("SASD"). *Progress for Bakersfield Veterans, LLC*, 151 Fed. Cl. 622 (2020) (PBV I). Eventually the agency made an award to SASD, and, after an unsuccessful protest at the General Accountability Office ("GAO"), plaintiff commenced its second protest here.

PBV alleges that the VA violated the Federal Acquisition Regulation ("FAR") when it amended the solicitation without issuing a formal written amendment, unlawfully awarded the lease to intervenor, and abused its discretion by failing to cancel and reissue the solicitation in response to its changed requirements. Plaintiff seeks a permanent injunction preventing the VA from proceeding with the awarded lease. Defendant and intervenor filed motions to dismiss for lack of standing, and alternatively, seek judgment on the administrative record. Defendant also seeks dismissal of plaintiff's statutory arguments and plaintiff's claim regarding the solicitation's 24-month provision. The motions are fully briefed, and oral argument was held on March 3, 2022. For reasons explained below, we grant defendant's motion to dismiss plaintiff's statutory arguments for lack of jurisdiction and plaintiff's claim regarding the solicitation's 24-month provision on waiver grounds. In addition, because we conclude that the VA did not waive solicitation requirements by awarding the contract to SASD, we grant defendant's and intervenor's motions for judgment on the administrative record and deny plaintiff's motion.

2

BACKGROUND

We assume familiarity with the facts set out in our decision in PBV I and will not repeat the background to the prior protest.

A. PBV's Pre-Award Protest in this Court

In PBV I, we denied PBV's pre-award protest, finding that its ADA and bias claims were barred by the doctrine of waiver. We rejected PBV's remaining substantive claims, holding that VA acted reasonably when it evaluated the offers and removed PBV from the competitive range.

In that opinion, we described the shortcomings the Technical Evaluation Board ("TEB") and Source Selection Authority ("SSA") found in PBV's three offers, which were found to be technically inadequate. PBV's Westwind 1 offer was rated overall as "marginal" with "several significant weaknesses which were not readily correctible, including what [the TEB] viewed as the space plan's significant departure from VA's concept plan, the building structure's functional, programmatic, and spatial relationship issues, and the current design's operational problems for managing clinic resources, which would require a major re-design effort." AR 12374. PBV's Westwind 2 offer received an overall "poor" technical rating because it contained "numerous weaknesses, including a building interior that appeared to be sterile and not patient-centric and because the floor plan failed to implement the model required by the solicitation." AR 12387-88. PBV's [      ] proposal received an overall "marginal" technical rating because the proposal "contained several significant weaknesses which were not readily correctable, including parking discrepancies, failure to present detail regarding its plan for successful contract completion, and failure to explain a strategy for sequencing the work as the solicitation required." AR 12378.

We found no error in the agency's determination, not only that "SASD's proposal was the most highly rated, but that the three remaining proposals were qualitatively so much poorer that there was no point including any of them in the competitive range." 151 Fed. Cl. at 637-38. We determined that the VA's decision to leave only the most highly rated proposal, that of SASD, in the competitive range was supported by the record and was not arbitrary or capricious.

B. Amendment Four and Award

After our 2020 decision, the VA entered into negotiations with SASD regarding the award of a lease. On January 15, 2021, the VA issued

Amendment four and called for a revised offer from SASD due, in part, to added costs for cleaning due to COVID-19 specifications and because the lengthy delay due to protest proceedings coincided with increases in Labor Department wage rate increases.

The amendment made several changes to the solicitation. It removed an alternative for the space to be delivered within 20-months, leaving only the 24-month delivery time frame. The amendment also included the updated Department of Labor wage determinations and added cleaning requirements due to the COVID-19 epidemic. This change also included a reservation of the right to "unilaterally cancel this routine cleaning and disinfecting at any time during the Lease term and, in such a case, the rental rate will be reduced by the amount specified . . . ." AR 17088.

SASD's second revised offer was considerably higher in price than its first revised offer. This prompted a negotiation call between the VA and SASD on February 10, 2021. During that call, "[s]ingle line items were discussed, with many costs increasing based on the procurement delay and COVID protocols inserted by VA and how COVID is influencing construction pricing for both materials and labor (the later having the biggest impact.)" AR 17233. The negotiations resulted in the VA requesting a third revised offer from SASD, "which offered a rent reduction of [       ] on a full-service basis on a net usable square foot basis." *Id.* The agency's final price evaluation further states that "[o]f that rent savings, [       ] was captured with a reduction in operating expenses." *Id.*

The VA then completed a scoring analysis of SASD's third revised offer. Pursuant to the solicitation, offers had to score as an operating lease under the OMB Circular A-11, Appendix B to be eligible for award. To score as an operating lease "the present value of the minimum contractually required payments over the life of the lease cannot exceed 90 percent of the fair market value ("FMV") of the asset at the beginning of the lease term." AR 33219. The VA calculated the price of SASD's lease to be [       ] percent of FMV, below the 90 percent threshold.

On March 15, 2021, the Contracting Officer issued an award decision memorandum finding that SASD

> offered the VA a 30,100 NUSF building which offered the best value to the Government. It is, therefore, the CO's determination that the proposal submitted by SASD for a 20-year firm term lease is fair and reasonable and represents the

> best value to the Government. I hereby recommend the acceptance of the SASD offer.

AR 17502-03. The agency summarized the awardee's offer as follows: annual unserviced rent for years one through twenty at [     ], along with a lump sum payment of [     ]. The VA and SASD executed the lease on April 26, 2021. The following day, VA provided PBV a post-award debriefing.

### C. PBV's Post-Award GAO Protests

On May 6, 2021, PBV filed a new protest at GAO, raising three allegations. PBV argued that, when VA issued amendment four, it should either have provided the amendment to PBV or re-solicited the lease; that the agency improperly treated SASD's proposed lease as an operating lease, as opposed to a capital lease;[2] and that VA unreasonably failed to reopen the solicitation in light of SASD's increased price. PBV also argued in a supplemental protest that VA should have cancelled or amended the solicitation because, in its view, SASD's clinic site would not be able to meet environmental assessment requirements and, as a result, SASD would not be able to meet the lease's 24-month completion deadline.

On August 11, 2021, GAO denied PBV's protest. It held that the amendment did not change the terms and conditions of the solicitation in any material way; that the VA was not required to provide the solicitation amendment to PBV because its offer was not in the competitive range and the subject of the amendment was not directly related to the reasons that VA excluded PBV from the competitive range; and that PBV's arguments concerning the operating lease calculation and environmental requirements were untimely. *Progress for Bakersfield Veterans, LLC*, B-418703.7 *et al.*, 2021 CPD ¶ 303 (Comp. Gen. Aug. 11, 2021). In addition, the GAO held that PBV's argument that SASD would not be able to complete the construction of the clinic in 24 months was not supported by the record. *Id.* On November 8, 2021, PBV filed its complaint here.

---

[2] For purposes of calculating whether a lease can be considered an operating lease, the solicitation instructs that the amount for items that the agency will pay as a lump sum upfront are excluded from the amount of rent payments if those items are associated with special features or enhancements to meet the government's needs or agency specific customization.

DISCUSSION

PBV makes several arguments, but during oral argument it focused on five: (1) That the VA violated various statutory limitations on the appropriations available for the lease; (2) that the VA's award to SASD amounted to a waiver of the solicitation's 24-month delivery provision; (3) argues that the VA waived the solicitation's requirement that the offeror show control over the property over which it intended to build a facility; (4) that the VA unlawfully amended the solicitation by awarding a lease to SASD even though SASD's proposal did not score as an operating lease; (5) and that the VA reduced the importance of price by awarding SASD's proposal at a [      ] price premium in comparison to PBV's lowest-priced offer.

Our review is deferential in accordance with the standard set forth in the Administrative Procedures Act, 5 U.S.C. § 706, which is to say that we review agency action in a procurement for illegality and a lack of rationality. *Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). So long as the agency's decision was not irrational or otherwise illegal, we will leave it undisturbed.

I. Motions to Dismiss

Defendant moves to dismiss several claims on jurisdictional and waiver grounds and more broadly asserts that the complaint should be dismissed for lack of standing. Intervenor makes the latter point as well in its own motion to dismiss.

A. Jurisdiction

The government moves to dismiss plaintiff's statutory claims for lack of jurisdiction. PBV argues that the award to SASD ran afoul of three legislative prohibitions concerning lease funding. It cites the ADA, Public Law 113-146, § 602, and 38 U.S.C. § 8104. Plaintiff's statutory arguments are premised on the notion that the lease could not exceed the $3.4 million authorized by Congress in 2009 in PL 111-82. Assuming that figure is correct, the twenty-year lease would have violated the Anti-Deficiency Act, 31 U.S.C. § 1341, in its first year, according to plaintiff. In addition, Section 8104 requires the VA to notify Congress of the terms of the lease, which plaintiff contends was not done. *See* 38 U.S.C. § 8104(b) (2018). Finally, plaintiff asserts that the VA violated § 602 by not having up-front budget authority in an "amount equal to total payments under the full term

6

of the lease or [an] amount sufficient to cover first year lease payments plus cancellation costs." Public Law 113-146, § 602(a)(3).

Defendant disagrees with the factual predicates to these contentions but principally argues that this court lacks jurisdiction to entertain any of these allegations because they concern appropriation provisions and not procurement statutes. It points out that our jurisdiction under 28 U.S.C. § 1491(b), extends only to "challenges to statutes or regulations 'in connection with a procurement or proposed procurement.'" *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381-82 (Fed. Cir. 2018). The government argues that none of the cited statutes are properly characterized as procurement statutes. We agree.

First, Public Law 113-146, § 602(b) details the mechanism through which the VA is to record lease obligations relative to, and "[s]ubject to the availability of appropriations provided in advance." Section 602(b)(1). This statute "says nothing of how [the agency] must run its procurement once the appropriation is made." *Cleveland Assets*, 883 F.3d at 1382. Similarly, 38 U.S.C. § 8104 does not describe "procurement procedures for any . . . construction, alteration, or lease." *Id.* Instead, 38 U.S.C. § 8104 identifies "'what material must be included in the 'prospectus of a proposed project,'" and when "the maximum cost may be increased." 38 U.S.C. § 8104(b)(1) (detailing the material that must be included in a prospectus provided to Congress with respect to a medical facility lease). Likewise, Public Law 111-82, does not direct how a procurement is to be made, but only provides an initial authorization for the lease amount. We conclude that Congress has not given the court a role, in the context of a procurement dispute, with enforcing these provisions. They "say[] nothing of how [the Agency] must run its procurement once the appropriation is made." *Cleveland Assets*, 883 F.3d at 1382.

In sum, plaintiff's arguments concerning these statutes are too tangential to the lease procurement. As the Federal Circuit instructs, "[i]f plaintiffs could allege any statutory or regulatory violation tangentially related to a government procurement, § 1491(b)(1) jurisdiction risks expanding far beyond the procurement context." *Id.* at 1381. If these statutes were to be interpreted as "procurement statute[s], every appropriations bill and rider would become a potential source of challenge for any interested party under 28 U.S.C. § 1491(b)(1)." *Id.* at 1382. Accordingly, we grant the government's motion to dismiss plaintiff's statutory claims for lack of jurisdiction.

B. Motion to dismiss on waiver grounds

PBV alleges that SASD would be incapable, as required by the solicitation, to complete the construction of the facility within 24 months, and that the VA knew this before executing the lease. By nonetheless awarding the contract to SASD, PBV alleges that the agency must have amended the solicitation to allow SASD to complete the clinic in more than 24 months. Defendant also moves to dismiss this claim on waiver grounds pursuant to the Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").

We agree with defendant. In support of its claim, PBV admits that, prior to submitting its offer, it knew, not only that it could not complete the project within 24 months, but also "that no one could deliver a newly constructed clinic within 24 months." Pl. Mot. at 17. PBV states that its principals were "active investors and operators in Bakersfield over 15 years," and that PBV had a "long, deep and highly relevant construction experience in Bakersfield." *Id.* at 16-17. The government disagrees that SASD's proposal reflected an inability to complete on time, but it argues that PBV has in any event waived its objection to the solicitation's 24-month delivery provision. If PBV was aware of the problem, it should have raised it before submitting its own offers to complete the clinic within 24 months.

We agree. Plaintiff cannot reserve an issue with a solicitation requirement until after its offers have been rejected. It had a duty to protest the asserted flaw in the solicitation before submitting its own offers. In short, PBV has waived its argument concerning SASD's asserted inability to complete the project within the 24-month period. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). We grant the government's motion to dismiss plaintiff's claim regarding the 24-month alternative on waiver grounds.

C. Motion to dismiss for lack of standing

Defendant and intervenor also move to dismiss all of plaintiff's complaint pursuant RCFC 12(b)(1) for lack of standing. They argue that plaintiff lacks standing because it cannot show that the VA would likely award the lease to PBV given that the court has accepted the agency's conclusion that PBV's offers were outside the competitive range. Because plaintiff's ratings were too poor or marginal, and in ways that were not readily correctable, defendant argues that plaintiff fails to show that removal of the errors would have presented plaintiff with a substantial chance for

8

award or inclusion within the competitive range.

In its response, plaintiff asserts that it was prejudiced by being evaluated under different requirements than those applied to SASD. There is a substantial chance, it argues, that the VA would have made the award to plaintiff if it could have competed on the same terms as SASD; that if the agency's actual requirements had been reflected in the solicitation, PBV would have made material changes to its proposal and would have had a substantial chance of being selected for award. If plaintiff is correct that there were material changes to the solicitation after it was excluded, without which SASD would have been excluded or the agency would have been forced to resolicit, it is true that plaintiff might have standing. On those assumptions, the agency would not be in a position to award to SASD and there were no other offers ahead of PBV for the award. This possibility means that we cannot reject the balance of plaintiff's claims for lack of standing. We therefore must decide the merits of the remaining claims and thus deny the motions to dismiss on standing grounds.

II. The Remaining Merits

PBV has remaining three primary challenges to the VA's award to SASD: (1) that the VA waived the solicitation's requirement that the offeror show control over the property on which it intended to build a facility; (2) that the VA unlawfully amended the solicitation by awarding a lease to SASD even though SASD's proposal did not score as an operating lease; and (3) that the VA reduced the importance of price by awarding SASD's proposal at a [    ] price premium in comparison to PBV's lowest-priced offer. We find that all three of plaintiff's challenges lack merit.

　A. The VA did not waive requirements related to the control of the property

PBV argues that the VA waived the solicitation's requirement that the offeror show control over the property over which it intended to build a facility by awarding a lease to SASD even though SASD's proposal did not provide the required evidence of site control.[3] PBV alleges that SASD only

---

[3] The solicitation defined evidence of site control as including "the following fully executed documents: an option to purchase, a purchase and sale contract, a fee simple deed, an option to lease property for longer than the duration of the lease term including all renewable options and the post-award design and construction phase." AR 162.

9

submitted evidence of a contingent right to purchase the property for a period that expired on July 1, 2020, prior to lease award.[4] Plaintiff argues that, although the provided information[5] may indicate that at some point SASD and the owners of the two parcels comprising its proposed site had an agreement to sell the property to SASD, that is insufficient under the solicitation to demonstrate ownership or control of the site.

PBV also complains that SASD failed to provide evidence to the VA regarding the right to subdivide of one of the parcels of land upon which part of SASD's facility was to be constructed. If SASD planned to subdivide one of the parcels, plaintiff alleges, doing so would violate California law,[6] and would have required a lot line adjustment from the City of Bakersfield,[7] which would delay the facility's construction. Finally, plaintiff argues that the VA waived a notary requirement because the documents SASD submitted as evidence of site control are not notarized.

Plaintiff argues that these deficiencies prejudiced it because, if the VA had properly enforced the requirements of solicitation § 1.11, it would have been forced to reject SASD's proposal, which would have increased the likelihood of PBV's being considered for and obtaining award. *See Crassociates, Inc. v. United States*, 95 Fed. Cl. 357, 390 (2010) (holding "that the combined impact of the [Agency procurement] errors encountered . . . clearly prejudiced plaintiff, since "[t]he correction of these errors

---

[4] "Closing of Escrow shall occur Sixty (60) days after Bakersfield VA Clinic award referenced as solicitation No. VA No. 38C10F19R0067 is awarded, but in no event later than January 15, 2021." AR 11850. Accordingly, the face of the documents provided indicate that the property would have fallen out of escrow prior to the time of award on April 23, 2021.

[5] SASD further provided a preliminary report in response to an application for a title insurance policy showing that "title to said estate or interest at the date hereof is vested in" owners other than SASD. AR 11854.

[6] California's Subdivision Map Act generally prohibits the sale of any parcel of real property for which a map is required, unless a map compliant with its provisions has been filed. California Government Code Sec. 66499.30.

[7] SASD's proposal indicates that it intended to request a lot line adjustment. But plaintiff asserts that a lot line adjustment requires approval from the City of Bakersfield.

undoubtedly could lead to significant fluctuations in both technical ratings and price, paving the way for plaintiff to receive an award of the contract").

We agree, however, with defendant and intervenor that SASD provided sufficient information to support the VA's determination that SASD had control of the site. Solicitation provision § 1.11 requires that offerors show proof of ownership and chain of title through a current title report. The solicitation did not require actual ownership, but rather "the right to ownership or control of the site during the term of the lease." AR 162. The evidence of the right to control includes an option to purchase. Here, SASD provided VA with documentary evidence showing that SASD had entered into an option agreement to purchase the property upon which the clinic is to be constructed.[8] Contrary to PBV's assertions, the option to purchase agreement did not expire but had been extended to July 15, 2021, well past the April 26, 2021 lease execution date. That argument thus fails.

Regarding the issue of the application of city and state law to SASD's proposed use of the site, the solicitation did not require this level of detail in setting forth and demonstrating site control. Plaintiff has not established that the VA was under either a duty to enforce these requirements nor that it promised to do so in the solicitation.

During oral argument, defendant conceded that the documents SASD submitted as evidence of site control were not notarized, however, we agree with the government that this error is *de minimis* and correctible and does not justify overturning the lease award. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 1000 (Fed. Cir. 1996) (*de minimis* errors in the procurement process do not justify relief) (citing *Andersen Consulting v. United States,* 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)). Plaintiff has not presented a basis for overturning the award.

   B. The VA did not waive the solicitation's requirement that the lease score as an operating lease

The solicitation states that the agency will award a lease "only if the Lease will score as an operating lease under Office of Management and Budget Circular A11, Appendix B." AR 163. As explained earlier, this means that the present value of the lease payments cannot exceed 90% of the

---

[8] The agreement contains the title-related documents connected with the property. In addition, SASD provided a title report with its related documents to VA.

11

fair market value of the facility.  PBV contends that the VA unlawfully amended the solicitation by making the award to SASD when it neglected to properly take into account the upfront payment that SASD would receive in year one.  It points to the following language of the Circular:

> If the terms of a lease contain an upfront, lump sum payment, only the amounts associated with special features or enhancements to meet the Government's unique needs or specifications and the amounts associated with agency specific customizations can be removed from the agency scoring calculation. Any payment in excess of that amount will be factored into the net present value scoring calculation.

Pl.'s Compl. at 11 (quoting OMB Circular No. A–11 (2016), Appendix B at 7).  Plaintiff argues that the VA failed to perform the required analysis of the proposed upfront payment to ensure that it only contained items contemplated by the OMB Circular.[9]  If the agency had applied these costs to the rental value, according to PBV, it is possible that SASD's lease would not score as an operating lease.

   Plaintiff also asserts that the VA permitted SASD to use its lump sum amount to mitigate the risks that it will not get the necessary approvals to proceed with the project.  To support this assertion, PBV points to an email between SASD and the VA, in which the VA "agreed that the lump sum amount for Sustainable Design is available to SASD in the event the project does not move forward as a result of this challenge by the incumbent Lessor in Bakersfield, PBV and or due to issues outside of SASD's control."  AR 18276.  Plaintiff argues that this email shows that the VA permitted SASD to use part of the lump sum earmarked for "Sustainable Design" to mitigate the risks that SASD will not get the necessary approvals to proceed with the project.  PBV argues that if SASD's lease had been properly scored, the award could not go forward and there is a substantial chance that the agency would have reopened the competitive range or otherwise made an award to PBV.

---

[9] As support, plaintiff states that although the solicitation identified costs associated with "Sustainable Design and Energy Efficiency" as a "specific enhanced federal requirement cost" to be excluded from the rental rate, it appears that the agency conflates sustainable design costs with all design costs. AR 417.  We have no basis, however, for overturning the agency's conclusion that the lump sum amount only included funds earmarked for "Sustainable Design."

12

In its response, the government asserts that the VA's exchange with SASD does not show that the agency improperly mitigated risks, rather it acknowledges the unrelated and innocuous obligation to pay SASD for its work if the lease were prematurely terminated due to a protest. For the first 11 months of the lease SASD was to design the facility so that it complied with the sustainability and energy efficiency directives. The CO was hypothesizing in her emails that if SASD were to be terminated as a contracting partner during this time, SASD would be owed the cost of its performance up to the point of that termination.

More basically, PBV does not identify any specific costs that should not have been included in the lump sum. It has not, therefore, shown any prejudice from this asserted agency action. It merely suggests that the VA should have been more skeptical of the sorts of items included in the upfront lump sum amount and speculates that "there is a substantial chance it would have removed impermissible costs from the lump sum and included them in SASD's rent." Pl. Mot. at 14. Agencies, however, "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." *Tidewater Management Servs., Inc. v. United States,* 573 F.2d 65, 73 (Ct. Cl. 1978). In the absence of any clear basis for second-guessing the agency's acceptance of the elements of the lump sum payment, we have no basis for sustaining this claim.

C. The VA did not reduce the importance of price in the evaluation and award decision

PBV asserts that the agency ignored those terms of the solicitation which provide that technical evaluation factors are considered equal to price in determining which offeror poses the best value.[10] It points to the fact that, between the time SASD submitted its initial offer and the time of award, SASD increased its rental rate by more than [   ] and that the VA eventually accepted a price from SASD's which was [   ] price higher than PBV's lowest-priced offer. PBV argues that the agency therefore disregarded price in its award decision, and that, if SASD's proposal, as repriced, had been compared to PBV's offers, the agency should have made the award to plaintiff. *See Amazon Web Servs. v. United States*, 147 Fed. Cl. 146, 154 (2020) (to establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract, but

---

[10] AR ¶ 2.2 at 171 ("The technical evaluation factors other than cost or price, when combined, are approximately equal to price").

13

"plaintiff must, at a minimum, show that had the alleged errors been cured, . . . its chances of securing the contract [would have] increased").

Defendant and intervenor argue that record gives an unproblematic explanation for SASD's price increase. We agree. After PBV was removed from the competitive range, the VA and SASD participated in price negotiations in response to Amendment Four, which led to increases in SASD's price, a process common in competitive procurements. FAR 15.306(d) provides that "after the competitive range has been established, the Government and offerors can undertake negotiations with the intent of allowing the offeror to revise its proposal." FAR 15.306(d). These negotiations may include bargaining as to "price, schedule, technical requirements, type of contract, or other terms of a proposed contract." *Id.* The price negotiations by themselves do not indicate that the agency amended the evaluation criteria to discount the price factor.

More importantly, the [    ] increase in price is attributable to at least two phenomena which would have impacted any bidder, namely, the increase in costs due to COVID, and increased labor wage rates. This procurement has been delayed almost five years. Plaintiff cannot rely on cost increases triggered by delay which would have equally affected its costs. *See Golden Mfg.*, 107 Fed. Cl. at 276-277 (denying protest where the modification affected all offerors equally and concluding that the change would not change the relative competitiveness of the proposals evaluated); *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 109 (2004) (nature of the work changed substantially and nearly doubled the price of the contract).[11]

## CONCLUSION

Plaintiff has not established that the VA waived solicitation requirements by awarding the lease to SASD. Plaintiff's argument regarding the solicitation's 24-month requirement came too late. With respect to plaintiff's statutory arguments, we find that we do not have jurisdiction to hear arguments concerning appropriation statutes. The issues of price and lease scoring are equally unavailing for the plaintiff. Not having shown success on the merits, we need not consider the other injunctive factors. No relief is warranted. Accordingly, plaintiff's motion for judgment on the

---

[11] We have considered PBV's other arguments and find them unpersuasive.

administrative record is denied. Defendant's motion to dismiss is granted in part, as explained above. Defendant's and intervenor's motions for judgment are granted. Accordingly, the Clerk of Court is directed to enter judgment for defendant. No costs.

<u>s/Eric G. Bruggink</u>
ERIC G. BRUGGINK
Senior Judge
